UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X

TRUSTEES OF THE LOCAL 813 I.B.T. INSURANCE
TRUST FUND,
THE LOCAL 813 I.B.T. PENSION TRUST FUND, and
THE LOCAL 813 AND LOCAL 1034 SEVERANCE **REPORT AND**
TRUST FUND **RECOMMENDATION**

                                Plaintiffs,          07-CV-00656 (FB) (KAM)

    -against-

AMANDA CARTING CORP.,

                              Defendants.

---------------------------------------------------------------------x

**MATSUMOTO, United States Magistrate Judge:**

        On April 5, 2007, plaintiffs Trustees of the Local 813 I.B.T. Insurance Trust Fund, Trustees of the Local 813 I.B.T. Pension Trust Fund, and Trustees of the Local 813 and Local 1034 Severance Trust Fund (collectively "plaintiffs" or the "Funds"), filed a motion for entry of default against defendant Amanda Carting Corp. ("defendant"). (See dkt. no. 4, Motion for Entry of Default, dated 4/5/07.) On July 12, 2007, the clerk entered default against Amanda Carting Corp. (See dkt. no. 5, Entry of Default, dated 7/12/07.) On July 24, 2007, Senior District Judge Frederic Block granted the plaintiffs' motion for entry of default, and referred the motion to the undersigned for issuance of a Report and Recommendation regarding the requested relief pursuant to 28 U.S.C. § 636(b)(1)(B). (See dkt. no. 7, Order, dated 7/24/07.)

        For the reasons set forth below, this Court respectfully recommends that the judgment be entered for plaintiffs against defendant in the amount of $2,738.40, plus accrued interest in the amount of $602.46, statutory liquidated damages of $547.68, attorney's fees of

1

$1285.00 and costs of $350.00, for a total of $5,523.54.

## DISCUSSION

The Second Circuit has approved the holding of an inquest by affidavit, without an in-person court hearing, "as long as [the Court has] ensured that there was a basis for the damages specified in the default judgment." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (quoting Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989)). Moreover, where "the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages will be taken as true." Chen v. Jenna Lane, Inc., 30 F. Supp. 2d 622, 623 (S.D.N.Y. 1998); see also Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). A default judgment that is entered on the well-pleaded allegations in a complaint establishes a defendant's liability (see Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 854 (2d Cir. 1995)), and the sole issue before the court is whether the plaintiff has provided adequate support for the relief it seeks. Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).

The following facts are established in the Complaint. (See dkt. no. 1, Complaint, dated 2/14/07 ("Compl.").) The Funds are "employee benefit" plans within the meaning of 29 U.S.C. §§ 1002(37) and 1132(d)(1), as well as "multi-employer" benefit plans within the meaning of 29 U.S.C. §§ 1002(37) and 1145. (Compl. at ¶ 6.) Under the terms of the collective bargaining agreement (the "Agreement") between the Funds and defendant, defendant was obligated to pay contributions to the Funds in the amount of $1,799.28 for the period of January 1, 2004 through December 31, 2004. (Compl. at ¶¶ 13-15, 17.) In addition, the defendant was obligated to pay contributions to the Funds in the amount of $1,486.80 for the period of January 1,

2005 through December 31, 2005. (Compl. at ¶¶ 20-22, 24.)[1] Defendant failed to make such payments. (Compl. at ¶¶ 17, 24.)

In a subsequent submission to the Court, the Funds' internal auditor, Gil Hodes, corrected the previous calculation for unpaid contributions and determined that the amount owed for the period of January 1, 2004 through December 31, 2004 is $1,499.40.[2] (See dkt. no. 8-3, Affidavit of Gil Hodes, dated 8/10/07 ("Hodes Aff."), Exh. A.) In addition, Mr. Hodes affirmed that the corrected amount owed for the period of January 1, 2005 through December 31, 2005 is $1,239.00.[3] (Id.)

Plaintiffs are entitled to relief pursuant to 29 U.S.C. § 1132(g)(2), which mandates that the Court award the Funds:

(A)  the unpaid contributions,
(B)  interest on the unpaid contributions,
(C)  an amount equal to the greater of –
    (i)   interest on the unpaid contributions, or
    (ii)  liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
(D)  reasonable attorney's fees and costs of the action, to be paid by the defendant, and
(E)  such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).

---

[1] The Court notes that plaintiffs' complaint as originally filed lacks a paragraph 20. The Court has accordingly renumbered paragraphs 21-24 to their correct number, paragraphs 20-23.

[2] Calculated by adding the sum of unpaid contributions in the amount of $1,330.75 and shortages of $168.65. (See Hodes Aff., ¶ 2(b).)

[3] Calculated by adding the sum of unpaid contributions in the amount of $929.25 and shortages of $309.75. (See id., ¶2(c).)

*A.      Unpaid Contributions*

As set forth below, plaintiffs have provided sufficient proof, through affidavits of counsel and Mr. Hodes and accompanying worksheets, of the principal owed by defendant in the amount of $2,738.40[4] (see Hodes Aff., Exh. A). In the Complaint, plaintiffs allege that defendant "violated Section 515 of ERISA . . . by reason of its failure and refusal to pay the correct amount of contributions to the Funds pursuant to the terms of its collective bargaining agreement." (Compl. ¶ 16.) On July 24, 2007, this Court directed plaintiffs to provide additional documentation in support of its motion for default judgment by August 7, 2007. (See Order dated 07/24/2007.) Plaintiffs did not respond to that order, so the Court again ordered plaintiffs to file a memorandum of law and supporting affidavits, by August 15, 2007. (See Order dated 08/09/2007.)

On August 13, 2007, plaintiffs' counsel submitted a memorandum of law in support of default judgment, and the Affidavit of Gil Hodes, who conducted a payroll audit of defendant's books and records for the years 2003, 2004 and 2005, which resulted in a total outstanding principal balance of $2,738.40 for that period. (See Hodes Aff., Exh. A.) This figure includes unpaid contributions alleged to be owed by defendant to the Funds for the years 2004 and 2005, as well as shortages in payments during the same time period. (See id.)

Mr. Hodes concluded that no monies were owed for 2003. (See id., ¶ 2(a).) For the year 2004, Mr. Hodes found that the Funds are owed $1,330.75 in unpaid contributions, broken down as follows: $768.75 due to the insurance fund, $370.00 due to the pension fund, and $192.00 due to the severance fund. (See id., ¶ 2(b).) In addition, for the same period, Mr. Hodes found

---

[4] Although plaintiffs have only requested $2,686.40, based on the Hodes affidavit, this Court notes that this is a miscalculation on the plaintiffs' part and respectfully recommends that the District Court award the amount of $2,738.40 as the principal amount of unpaid contributions owed to plaintiffs.

4

that the Funds are owed $168.65 in shortages, broken down as follows: $92.25 due to the insurance fund, $44.40 due to the pension fund, and $32.00 due to the severance fund. (See id.) For the year 2005, Mr. Hodes found that the Funds are owed $929.25 in unpaid contributions, broken down as follows: $536.25 due to the insurance fund, $237.00 due to the pension fund, and $156.00 due to the severance fund. (See id., ¶2(c).) Also, for the same period Mr. Hodes found that the Funds are owed $309.75 in shortages, broken down as follows: $178.75 due to the insurance fund, $79.00 due to the pension fund, and $52.00 due to the severance fund. (See id.)

The defendant's failure to make the required contributions violated the terms of the collective bargaining agreement, as well as ERISA. See 29 U.S.C. § 1145 ("Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement."). Plaintiffs have provided sufficient proof of the principal owed in the amount of $2,738.40 through Mr. Hodes' Affidavit and the accompanying Payroll Audit. (See Hodes Aff., Exh. A.)

### B. *Interest*

In addition to the principal amount, 29 U.S.C. § 1132(g)(2)(B) entitles plaintiffs to recover interest on the unpaid contributions, calculated at the rate specified in the collective bargaining agreement or, if none is stated, the rate prescribed by 26 U.S.C. § 6621. See 29 U.S.C. § 1132(g)(2)(B). Here, because the agreement does not provide an interest rate, the interest rate is established by 26 U.S.C. § 6621(a)(2), which provides that, in instances of underpayment, the rate of interest is the federal short-term rate plus three percentage points. See 26 U.S.C. § 6621(a)(2). Moreover, interest under 26 U.S.C. § 6621 "shall be compounded daily." 26 U.S.C. § 6622(a);

see also Russo v. Unger, 845 F. Supp. 124, 128-129 (S.D.N.Y. 1994). A table calculating the interest rates mandated by 26 U.S.C. § 6621 is published by the Internal Revenue Service in a Revenue Ruling. See Rev. Rul. 2007-16. The interest rates are calculated every calendar quarter. For the time period for which plaintiffs have requested damages, the federal short-term rate fluctuated between 1% and 4%. *See id.*

In cases where 26 U.S.C. § 6621 is used to calculate interest, courts have some judicial discretion in determining the short-term rate that is applicable and how to calculate interest when the short-term rate changes over the course of a time period. See Finkel v. Tech Man, Inc., No. 06-CV-2264, 2007 WL 433399, at *3 (E.D.N.Y. Feb. 6, 2007); Trustees of Local 813 I.B.T. Ins. Trust Fund v. Bay Area Portables, Inc., No. 04-CV-1716, 2006 WL 1313819, at *4 (E.D.N.Y. May 9, 2006); Trustees of Local 813 I.B.T. Ins. Trust Fund v. Long Island, No. 04-CV-0370, 2005 WL 1118137, at *2 (E.D.N.Y Apr. 14, 2005).

Plaintiffs' submissions propose an interest rate of 8% using the federal short-term rate for the period January 1, 2006 through August 10, 2007 of 5% plus three percentage points. (See Affirmation of Arthur Hirschler, dated 8/10/07 ("Hirschler Affirm."), Exh. B.) Plaintiffs seek to recover, however, interest on unpaid contributions dating from January 1, 2004 to December 31, 2005. Therefore application of the federal short-term rate of 5% from January 2006 to August of 2007 is inappropriate.

A more accurate method of calculating the interest due to the Funds would be to use the principal balance owed for each calendar quarter for which plaintiffs claim unpaid contributions in 2004 and 2005, and then to apply the applicable interest rate for that quarter. This method reflects the fluctuations in the federal short-term rate for that applicable quarter, and allows for a more accurate accounting of the compounded interest. See Rev. Rul. 2007-16, see

6

also 26 U.S.C. § 6622 (a); (see also Hodes Aff., Exh. A.) The calculation is further assisted by taking the principal amount owed each quarter, compounding the interest for that quarter on a daily basis (see 26 U.S.C. § 6622(a)), and then carrying over the quarterly principal plus accumulated interest for that quarter into the following quarter, applying that quarter's published short-term rate, plus three percentage points.

Because plaintiffs failed to correctly calculate the principal amount owed and use the appropriate interest rate, this Court expended significant time and effort to determine the interest owed to plaintiffs. The Court calculated the interest starting February 1, 2004 (the first month in which defendant failed to make payments to the Funds), see Mason Tenders Dist. Council Welfare Fund v. Mackroyce Constr. Corp., 1998 WL 193075, at *2 (S.D.N.Y. 1998) (awarding interest on unpaid contributions at a rate specified under an employee benefit plan from the date the payment first became due)), through October 24, 2007 (the date of this Report and Recommendation). Using the applicable interest rates and principal amounts, this Court calculates that the interest owed to the Funds is $602.46. (See infra, Appendix A.) Therefore, this Court respectfully recommends that the District Court award the plaintiffs $602.46 as the interest owed.

C.   *Liquidated Damages*

Plaintiffs also seek liquidated damages equaling 20% of the amount of unpaid contributions. The Agreement provides that the employer "shall be liable and shall pay to the respective Funds as to which there is a default, and an additional 20% of the amount due as liquidated damages for the additional bookkeeping or processing expense required by the Funds." (See id., Exh. A, Agreement, Art. 23, Sec. d.) Title 29 U.S.C. § 1132(g)(2)(C) provides for

7

liquidated damages "in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the subparagraph (A)," i.e., 20 percent of the unpaid contributions. 29 U.S.C. § 1132(g)(2)(c); see also Building Service 32B-J Pension Fund v. Vanderveer Estates Holding, LLC, 121 F. Supp. 2d 750, 758 (S.D.N.Y. 2000) (awarding liquidated damages equal to 20% of the delinquent contributions). Thus, in accordance with the Agreement, the Court will apply the maximum statutory liquidated damages rate of 20%.

Liquidated damages serve as a statutory penalty for a defendant's failure to make required contributions. Mason Tenders Dist. Council v. Envirowaste and Transcontractors, Inc., No. 98 Civ. 4040, 1999 WL 370667, at *2 (S.D.N.Y. June 7, 1999) (citing Iron Workers Dist. Council of Western New York & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc., 68 F.3d 1502, 1506 (2d Cir. 1995)). Accordingly, in addition to the payment of unpaid contributions and interest, the Court respectfully recommends that defendant pay plaintiffs liquidated damages in the amount of 20% of $2,738.40, or $547.68.

### D.    *Attorneys Fees and Costs*

Plaintiffs seek an award of attorney's fees in the amount of $1,926.00, and costs in the amount of $350.00. Title 29 U.S.C. § 1132(g)(2)(D) provides that, in any action by a fiduciary for a plan in which a judgment in favor of the plan is awarded, "the court shall award the plan . . . reasonable attorney's fees and costs of the action, to be paid by the defendant." 29 U.S.C. § 1132(g)(2)(D); see also Hudson Steel, 68 F.3d at 1506 ("Congress . . . made the award of attorney fees mandatory for suits involving delinquent employers."); Envirowaste, 1999 WL 370667, at *2.

A determination of the appropriate award for attorneys' fees rests soundly within

the discretion of the district court. See Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). "The party seeking reimbursement bears the burden of proving the reasonableness and necessity of hours spent and rates charged." Morin v. Nu-Way Plastering Inc., No. 03-CV-405, 2005 WL 3470371, at *2 (E.D.N.Y. Dec. 19, 2005) (citing New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136 (2d Cir. 1983)). "In determining the reasonableness of attorney's fees . . . courts have generally used the lodestar method, in combination with the twelve factors articulated in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1971)." Emerald Investments, LLC v. Porter Bridge Loan Co., No. 05-CV-1598, 2007 WL 1834507, at *4 (D. Conn. June 25, 2007). In a recent decision, however, Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 484 F.3d 162 (2d Cir. 2007), amended, 493 F.3d 110 (2d Cir. 2007), the Second Circuit explained that the better course is for the district court to "bear in mind *all* of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." Arbor Hill, 493 F.3d at 117. "The reasonable hourly rate is the rate a paying client would be willing to pay."[5] Id.

"[T]he burden is on the fee applicant to produce satisfactory evidence – in addition

---

[5] The Second Circuit directs that the district court,

> [I]n determining what a reasonable paying client would be willing to pay, [to] consider factors including, but not limited to, the complexity and difficulty of the case, the availab[ilty] and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether the attorney had an interest (independent of that of his client) in achieving the ends of the litigation or initiated the representation himself, whether the attorney was initially acting pro bono (such that a client might be aware that the attorney expected a low or nonexistent remuneration), and other returns (such as reputation, etc.) the attorney expected from the representation.

Arbor Hill, 493 F.3d at 112.

9

to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984). The "relevant community" that a court must consider in determining the presumptively reasonable fee is the district in which the court sits. See Luciano v. Olsten Corp., 109 F.3d 111, 115 (2d Cir. 1997) (citation omitted).

Hourly rates approved in recent Eastern District of New York cases have ranged from $200 to $375 for partners, $200 to $250 for senior associates and $100 to $150 for junior associates. See, e.g., Ueno v. Napolitano, 2007 WL 1395517, at *9 (E.D.N.Y. May 11, 2007) ("Reasonable rates for associates range from $100 to $250."); Expeditors Int'l of Washington, Inc. v. Rubie's Costume Co., Inc., No. 03-CV-3333, 2007 WL 430096, at *2 (E.D.N.Y. Feb. 2, 2007) ("Hourly rates approved in recent Eastern District of New York cases have ranged from $200 to $375 for partners at law firms."); Brady v. Wal-Mart Stores, Inc., 455 F. Supp. 2d 157, 208 (E.D.N.Y. 2006) (finding $225 per hour reasonable for senior associates).

Plaintiffs' counsel, Arthur Hirschler, Esq., has submitted an affirmation in support of the application for an award of attorneys' fees and costs, setting forth his hourly billing rate of $300.00, and his paralegal's hourly rate of $110.00, and attesting to the veracity of his contemporaneous time sheets, which specify the services he performed for the plaintiffs in this action. Those services consumed a total of 6.8 hours: 6.2 hours for Mr. Hirschler's services, and 0.6 for his paralegal's services. (See Hirschler Affirm., Exh. C.) Regarding Mr. Hirschler's hourly rate, because Mr. Hirschler states in his affirmation that he is an associate, but fails to set forth his legal experience, background, and training, the court finds insufficient justification for an hourly rate of $300.00. Cf. Ueno, 2007 WL 1395517, at *10 (finding that hourly rates ranging from $350 to $450 were reasonable because plaintiffs' counsel established "exceptional skill" and

"extensive experience"); and Expeditors, 2007 WL 430096, at *2 (although attorney's requested hourly rate of $340 to $370 was on the high side, finding that it was reasonable given his 25 years of litigation experience). Considering the factors enumerated in Arbor Hill, including but not limited to the routine nature of this action, and the lack of any need to litigate this action given the defendant's default, and bearing in mind that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively," the Court respectfully recommends that Mr. Hirschler's hourly rate be reduced to $200.00.

As for the hourly rate charged for the paralegal, Michael Kwiatkowski, the Court again finds insufficient justification to award the hourly rate requested. Mr. Kwiatkowski's time was charged at a rate of $110 per hour. (See Hirsch. Affirm., Exh. A.) Hourly rates for paralegals recently approved in this district range from $70 to $80 an hour. See BMG Music v. Pena, No. 05-CV-2310, 2007 WL 2089367, at *7 (E.D.N.Y. July 19, 2007) (approving a paralegal's fee of $80 an hour); La Barbera v. Golden Vale Constr. Group., No. 06-CV-0813, 2007 WL 2071565, at *6 (E.D.N.Y. July 17, 2007) (approving an award of $70 an hour); C.B. ex rel. W.B. v. New York City Dep't of Educ., No. 02-CV-4620, 2006 U.S. Dist. LEXIS 68649, at *40 (E.D.N.Y. Sept. 25, 2006) (reducing paralegal's fees from $90 an hour to $75 an hour). Plaintiffs submit no justification for a higher hourly rate for the paralegals in this routine ERISA action. Therefore, in accordance with recent case law in this district, the Court respectfully recommends that the paralegal's rate be reduced to $75 per hour.

Accordingly, the Court respectfully recommends that plaintiffs be awarded $1,285.00 in attorney's fees, calculated as follows:

```
    6.2 attorney hours    x    $200.00 = $1240.00
    0.6 paralegal hours   x     $75.00 = $45.00
              Total:               $1,285.00
```

In addition to the above fees, plaintiffs have submitted documentation of the costs incurred in bringing this action, specifically, the case filing and service fees (see Hirschler Aff., ¶ 7), which total $350.00. Accordingly, the Court respectfully recommends that plaintiffs be awarded costs of $350.00, pursuant to 29 U.S.C. § 1132(g)(2)(D)

.

## **CONCLUSION**

For the reasons set forth above, this Court respectfully recommends that the District Court award plaintiffs $5,523.54 as follows:

```
    Principal Amount          $2,738.40
    Interest                  $602.46
    Liquidated Damages        $547.68
    Attorneys' Fees           $1,285.00
    Costs                     $350.00
```

Plaintiffs' counsel is ordered to serve a copy of this Report and Recommendation on the defendant and to file proof of service by ECF no later than October 25, 2007. Any objections to this Report and Recommendation must be filed with Senior District Judge Frederic Block within ten days of the date of entry of this Report and Recommendation. Failure to object within ten days of the date of entry will preclude appellate review by the District Court. Local Civil Rule 6.3; Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.), cert. denied, 506 U.S. 1038 (1992); Small v. Secretary of Health and Human Services, 892 F.2d 15, 16 (2d Cir. 1989); see also Fed. R. Civ. P. 72(a) ("Within 10 days after being served with a copy of the magistrate judge's order, a party may serve and file objections to the order; a party may not thereafter assign as error a defect

in the magistrate judge's order to which objection was not timely made."). Any requests for extensions of time to file objections should be made to Judge Block.

**SO ORDERED**.

Dated: October 24, 2007
       Brooklyn, New York

/s/
**Kiyo A. Matsumoto**
United States Magistrate Judge
Eastern District of New York